Erin Rose Ronstadt, SBN 028362
Clayton W. Richards, SBN 029054
OBER PEKAS RONSTADT, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745
(602) 761-4443 Fax
erin@oprdisabilitylaw.com
clayton@oprdisabilitylaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Selene Drake-David, a married woman;<br><br>Plaintiff,<br><br>v.<br><br>Life Insurance Company of North America, a plan fiduciary,<br><br>Defendant. | No.<br><br>**COMPLAINT** |

For her claims against Life Insurance Company of North America ("LINA" or "Cigna" or "Defendant"), Plaintiff Selene Drake-David ("Ms. Drake-David" or "Plaintiff") alleges as follows:

**JURISDICTION, PARTIES, AND VENUE**

1. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

2. This is an action by Ms. Drake-David to recover long-term disability ("LTD") benefits under an insurance policy issued by LINA pursuant to the Mental Health Center of Denver Employee Benefit Plan ("the Plan").

3. The Plan is a purported ERISA benefit plan established and maintained by Mental Health Center of Denver ("MHCD" or "the Plan Administrator").

4. MHCD established the Plan for the benefit of its employees.

5.  Ms. Drake-David was a participant and beneficiary of the Plan as an employee of MHCD.

6.  MHCD is the Plan Sponsor and Plan Administrator for the Plan, a plan fiduciary, and employer.

7.  LINA is a third-party claims administrator for the Plan.

8.  LINA is a fiduciary of the Plan as defined by ERISA.

9.  Under the Plan, LINA fully insures employees of MHCD for LTD benefits pursuant to Policy Number LK-965492 ("the LTD Policy").

10. At the time Ms. Drake-David sought LTD benefits under the Plan, LINA administered claims for LTD benefits for MHCD under the Plan, acted on behalf of the Plan, and acted as an agent of MHCD or the Plan to make decisions regarding the payment or award of these benefits for the Plan and to administer the Plan.

11. Ms. Drake-David is a citizen and resident of Pima County, Arizona.

12. LINA has its principal place of business in the State of Pennsylvania.

13. LINA is licensed and authorized to do business in Pima County, Arizona, and resides and is found within Pima County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

14. Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

15. This Court has jurisdiction over the claims subject to ERISA under 28 U.S.C. §§ 1132(a) and 1132(e)(1).

**GENERAL ALLEGATIONS**

16. Ms. Drake-David began working for MHCD on October 26, 2015.

17. Ms. Drake-David worked as a LCSW/LPC/LMFT for MHCD. In this position, Ms. Drake-David was required to have a Master's Degree in social work, psychology, or a similar field; a current license as a LCSW/LPC/LMFT in the State of Colorado; a minimum of three years of experience in clinical social work; and experience working with moderate-to-severe and persistently mentally ill populations.

18. Ms. Drake-David's job description notes the following physical demands: "Ability to sit, stand, bend and reach, drive, operate standard office equipment such as phone, computer, facsimile, copier/printer, and other business machines. Occasional lifting up to 40 lbs."

19. Ms. Drake-David's job description notes the following mental demands: "Ability to give, receive and analyze information, formulate work plans, prepare written materials and articulate goals and action plans. Must understand people from all walks of life and be able to communicate effectively with them."

20. Ms. Drake-David's position required supervisory responsibilities of students and volunteers.

21. Ms. Drake-David's last date of work with MHCD was on May 4, 2018.

22. Ms. Drake-David ceased working secondary to her Disability as defined in the LTD Policy and Plan.

23. Ms. Drake-David suffers several debilitating medical conditions, including knee osteoarthritis, ankle deformities, spinal stenosis, fibromyalgia, chronic fatigue, dumping syndrome, sleep apnea, ischemic white matter disease, cognitive deficits, and aphasia.

24. Collectively, Ms. Drake-David's conditions are disabling and prevent her from performing the material duties of her Regular Occupation or Any Occupation under the LTD Policy and Plan.

25. Ms. Drake-David became Disabled while insured under the LTD Policy and Plan.

26. To be eligible for LTD benefits, Ms. Drake-David must meet the definition of "Disabled" as it is defined in the LTD Policy and Plan. Under the LTD Policy, Ms. Drake-David is considered Disabled if, solely because of Injury or Sickness, she is "unable to perform the material duties of [her] Regular Occupation" and "unable to earn 80% or more of [her] Indexed Earnings from working in [her] Regular Occupation." After Disability Benefits have been payable for 24 months, Ms. Drake-David is considered Disabled if, solely due to Injury or Sickness, she is "unable to perform the material duties of any

occupation for which [she is], or may reasonable become, qualified based on education, training or experience" and "unable to earn 80% or more of [her] Indexed Earnings."

27. The LTD Policy defines "Regular Occupation" as "[t]he occupation [Ms. Drake-David] routinely perform[ed] at the time the Disability be[gan]. In evaluating the Disability, [LINA] will consider the duties of the occupation as it is normally performed in the general labor market in the national economy. It is not work tasks that are performed for a specific employer or at a specific location."

28. The LTD Policy's Elimination Period is 90 days.

29. Ms. Drake-David's Gross Disability Benefit is $3,217.00, which is "60% of [her] monthly Covered Earnings rounded to the nearest dollar."

30. Ms. Drake-David's Covered Earnings were $30.93 an hour.

### LINA's Claim Handling

31. At the onset of her Disability, Ms. Drake-David first applied for, and received, short-term disability ("STD") benefits.

32. LINA also administered the STD benefits.

33. Ultimately, Ms. Drake-David received STD benefits through the maximum benefit period, which ended August 4, 2018.

34. On or around July 17, 2018, Ms. Drake-David provided Proof of Loss to LINA for her LTD claim.

35. Ms. Drake-David's LTD Proof of Loss included objective neuropsychological testing by Dr. Ginger Arnold, noting impaired scores in concentration, complex thinking/executive functioning tasks (*i.e.,* planning, organizing, problem solving, etc.), and delayed visual memory.

36. Ms. Drake-David's LTD Proof of Loss also included detailed assessments in support of her LTD claim from her treating physicians: Terry Cheung, FNP, Dr. Alan Zacharias, and Dr. Ginger Arnold.

37. In a letter dated September 11, 2018, LINA denied Ms. Drake-David's LTD claim (the "First Denial").

38. In reaching its First Denial, LINA relied upon paper file reviews conducted by LINA employees, including by a Claim Manager, Senior Claim Manager, Nurse Case Manager, Medical Director (Licensed Psychologist), and a Vocational Rehabilitation Specialist.

39. In its First Denial, LINA failed to properly consider the medical evidence, Ms. Drake-David's treating provider assessments, her credible reported symptomology, and the mental/cognitive vocational requirements of her Regular Occupation.

40. On September 28, 2018, Ms. Drake-David timely appealed LINA's First Denial (the "Appeal").

41. With her Appeal, Ms. Drake-David provided additional medical evidence and treating provider assessments in support of her Disability.

42. Ms. Drake-David's Appeal included a December 5, 2018 letter from Dr. Zacharias noting, "[a]s previously documented from my evaluation, brain imaging, and her neuro psychological testing, I can state, unequivocally, that she is not capable of performing work in a competitive environment with her current status of cognitive difficulty. Again, the detail that you need is quite explicit in the neuro psychological testing which she underwent and does not need further clarification."

43. Ms. Drake-David's Appeal included a December 5, 2018 letter from Dr. Arnold noting, "[Ms. Drake-David] is not able to think sequentially to effectively problem solve. She cannot manage finances, complete her disability application, or clearly answer questions. All of these difficulties clearly indicate that she cannot effectively follow patients' issues or effectively develop or implement treatment plans. Thus, seeing patients would result in harm to patients and would be unethical." Dr. Arnold also noted that her "opinions stated in [her July 9, 2018 assessment form] still stand." In her July 9, 2018 form, Dr. Arnold notes, "[Ms. Drake-David's] deficits make it impossible to work as a psychotherapist. She does not have the concentration, problem-solving skills, or stamina to provide safe and effective patient care. She cannot concentrate well enough to offer a useful therapy session,

and she cannot problem solve well enough to address crises, develop treatment plans, or complete paperwork."

44. Ms. Drake-David supplemented her Appeal with documentation from the Colorado State Board of Social Work Examiners (the "Board"). She could not maintain her LCSW license due to cognitive deficits.

45. Ms. Drake-David also supplemented her Appeal with documentation from the Social Security Administration ("SSA"). On February 10, 2019, the SSA found Ms. Drake-David disabled as of May 7, 2018, which entitled her to Social Security Disability Insurance ("SSDI") benefits as of November 1, 2018.

46. In a letter dated June 14, 2019, LINA upheld its denial of Ms. Drake-David's LTD claim (the "Second Denial").

47. In its Second Denial, LINA failed to explain why it credited its paper file reviews over Ms. Drake-David's treating providers, and why it unreasonably relied on the opinion of its paper file reviewers when it knew or should have known that they conducted an inadequate and biased review.

48. LINA's paper file reviews were arbitrary, contrary to the record, and unsupported by the collective medical evidence.

49. Similar to its First Denial, LINA again failed to properly consider the medical evidence, Ms. Drake-David's treating provider assessments, her credible reported symptomology, and the vocational requirements of her Regular Occupation in the Second Denial.

50. Ms. Drake-David's treating providers are best situated to evaluate her restrictions and limitations based on their expertise, longstanding treatment, and examination of her.

51. LINA had no reasonable basis to ignore Ms. Drake-David's treating provider assessments.

52. On information and belief, LINA did not conduct a vocational evaluation in reaching its Second Denial.

53. LINA conducted an inadequate and biased review of Ms. Drake-David's LTD claim/Appeal.

54. In its Second Denial, LINA failed to adequately explain the difference in policies or procedures reconciling the SSA's finding of disability and LINA's finding of non-disability.

55. LINA's Second Denial did not give a full and proper acknowledgment of the SSA determination—only a boilerplate acknowledgement.

56. While LINA noted differences between the two programs' definitions of disability, those differences should not have led to different outcomes in Ms. Drake-David's case.

57. On August 13, 2019, Ms. Drake-David sent her first request for all relevant documents under ERISA.

58. LINA received Ms. Drake-David's request for all relevant information via facsimile on August 13, 2019 and via certified mail on August 15, 2019.

59. Under ERISA, LINA is required to provide Ms. Drake-David with a copy of all relevant documents free of charge within 30 days from the date of receipt of the request. *See* 29 C.F.R. § 2560.503-1(i)(5).

60. LINA had a duty to provide all relevant documents on or before September 12, 2019.

61. LINA did not produce any relevant documents by September 12, 2019.

62. On October 11, 2019, Ms. Drake-David sent a second request for all relevant information to LINA.

63. On November 7, 2019, Ms. Drake-David sent a third request for all relevant information to LINA.

64. To date, LINA has not disclosed any relevant documents or even responded to Ms. Drake-David's multiple requests.

65. Due to LINA's failure to disclose relevant documents, Ms. Drake-David was prejudiced in her ability to participate in the second, voluntary appeal offered in the Second Denial, as well as in filing this lawsuit.

66. Ms. Drake-David cannot perform the material duties of her Regular Occupation or Any Occupation for which she is qualified by education, training, or experience, and therefore comes within the definition of Disability under the LTD Policy.

67. Ms. Drake-David exhausted her administrative remedies and timely filed this lawsuit.

## COUNT I
### (Recovery of LTD Plan Benefits)
### (LINA)

68. All other paragraphs are incorporated by reference.

69. The Plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

70. The Plan includes LTD coverage and a promise to provide LTD benefits pursuant to the Policy until Ms. Drake-David is no longer Disabled under the terms of the Plan.

71. Ms. Drake-David continues to be Disabled from her Regular Occupation and Any Occupation.

72. Ms. Drake-David has claimed the benefits under the Plan to which she is entitled.

73. Ms. Drake-David reasonably expected that her medical conditions met the requirements of Disability as defined by the LTD Policy, and that she would receive benefits under the Plan until the Maximum Benefit Period or until she was no longer Disabled.

74. Despite the coverage of Ms. Drake-David's Disability, LINA improperly terminated her LTD benefits in breach of the Plan and ERISA.

75. LINA's collective conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

76. In the LTD Policy, MHCD purported delegated discretionary authority to LINA.

77. Even if MHCD properly delegated discretionary authority to LINA, in light of LINA's wholesale and flagrant procedural violations of ERISA, Ms. Drake-David's claim should be entitled to *de novo* review. *See Halo v. Yale Health Plan,* 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department

-8-

of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

78. Instead of evaluating a participant's eligibility based on the applicable LTD Policy language and medical evidence, Ms. Drake-David is informed and believes that LINA makes claims decisions based on the claims resources and financial risk it faces on certain claims.

79. LINA wrongfully denied Ms. Drake-David's LTD benefits without providing a coherent explanation for its adverse benefit determinations, and in a way that conflicts with the plain language of the Policy, violating 29 U.S.C. §§ 1109, 1132.

80. LINA did not properly consider all of the available evidence when terminating Ms. Drake-David's benefits.

81. LINA failed to conduct a full and fair review.

82. LINA misstated medical evidence for its own financial benefit, *e.g.,* it excessively relied on biased medical reviewers, consultants, and examiners.

83. LINA improperly disregarded the SSA in its finding of Disability.

84. LINA relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Drake-David's LTD benefits.

85. LINA abused its discretion by basing its decision to terminate benefits on unreliable and inaccurate information. When confronted with this knowledge, LINA ignored the inaccuracies, or created new reasons for denial.

86. On information and belief, LINA tainted its medical file reviewers by giving the reviewers inaccurate information regarding Ms. Drake-David, while also failing to provide its reviewers with all of the relevant evidence.

87. On information and belief, LINA provided its reviewers and vendors with internal notes and financial information about the claims, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

88. LINA routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

89. On information and belief, LINA unreasonably withheld relevant documents during the claim and poorly managed the file, which is evidenced, in part, by its repeated failure to provide all relevant documents.

90. LINA's failure to comply with ERISA's disclosure requirements and poor management of the file demonstrate its abuse of discretion and improper claims handling.

91. LINA failed to appropriately consider the opinions of Ms. Drake-David's treating and examining physicians.

92. On information and belief, LINA used in-house reviewers in evaluating Ms. Drake-David's claim, because it knew that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Drake-David's benefits.

93. On information and belief, the peer reviewers arbitrarily reached their opinions based on insufficient evidence or investigation.

94. LINA failed to explain why it credited the physician reviewers over Ms. Drake-David's treating physicians.

95. LINA failed to fully explain why it disregarded or failed to duly consider the findings of the SSA.

96. Throughout the claim, LINA's actions demonstrated its efforts to limit liability on Ms. Drake-David's claim, even before it had the medical evidence necessary for a review. For example, it demanded Ms. Drake-David pursue other income benefits based on her disability while trying to find ways to claim her physical and cognitive conditions were not disabling. When the SSA determined Ms. Drake-David was disabled, LINA summarily disregarded the SSA's findings.

97. LINA engaged in other procedural irregularities, which it did to serve its own financial best interests.

98. On information and belief, LINA engaged in claim discussions to decide the directions of appeals without having reviewed all of the medical evidence, demonstrating its predetermined path of terminating benefits.

99. LINA intentionally gathered evidence to stack the deck in its favor and against Ms. Drake-David.

100. LINA failed to conduct a full and fair review, in part, because it cherry-picked and ignored information from the medical evidence and Ms. Drake-David's treating providers to support a decision to deny her LTD benefits.

101. LINA acted with malice and in bad faith against Ms. Drake-David by intentionally disregarding favorable evidence to substantiate Ms. Drake-David's disability to deny her LTD benefits.

102. LINA's conduct was motivated by financial considerations and caused by its structural conflict of interest as both decision maker and payor of Ms. Drake-David's LTD benefits.

103. LINA has failed to produce any evidence that it protected Ms. Drake-David from its conflict, and instead, intentionally withheld information that would have otherwise revealed the depth of its self-interested conduct.

104. Ms. Drake-David alleges, on information and belief, that LINA has a parsimonious claims handling history.

105. LINA failed to conduct a "meaningful dialogue" regarding Ms. Drake-David.

106. Under the *de novo* standard of review, to be entitled to benefits, Ms. Drake-David need only prove by a preponderance of the evidence that she is disabled.

107. Even under the abuse of discretion standard of review, LINA abused its discretion, because its decision terminating Ms. Drake-David's LTD benefits was arbitrary and capricious and was caused or influenced by LINA's, its reviewing physicians', and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair

review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

108. Ms. Drake-David is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process, and also regarding the effects of LINA's, its reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Drake-David's LTD claim.

109. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Drake-David is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

110. Ms. Drake-David is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits. She is entitled to a restoration of the *status quo ante* before her LTD benefits were wrongfully terminated.

111. Pursuant to 29 U.S.C. § 1132(g), Ms. Drake-David is entitled to recover her attorneys' fees and costs incurred herein.

112. Ms. Drake-David is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid.

**WHEREFORE**, Ms. Drake-David asks for entry of judgment against Defendants as follows:

    A. For all past-due LTD benefits;

    B. For an award of Ms. Drake-David's attorneys' fees and costs incurred herein under 29 U.S.C. § 1132(g) and A.R.S. §§ 12-341.01 and 351;

    C. For an award of prejudgment interest on benefits and damages at the highest legal rate until paid in full; and

    D. For such further relief as the Court deems just and reasonable.

OBER PEKAS RONSTADT, PLLC
3030 North 3rd Street, Suite 1230
Phoenix, AZ 85012
(602) 277-1745

Dated this 18th day of February 2020.

          OBER PEKAS RONSTADT, PLLC

          By: *s/ Erin Rose Ronstadt*
               Erin Rose Ronstadt
               Clayton W. Richards
               *Attorneys for Plaintiff*